Domingo Fernández Martínez y José Fernández, demandantes y apelantes, *v.* María Teresa Martínez, demandada y apelada.

Núm. 8357.—*Sometido:* Noviembre 26, 1941. *Resuelto:* Diciembre 2, 1941.

*F. Prieto Azúar*, abogado de los apelantes; *F. García Quiñones*, abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

José Fernández casó, en terceras nupcias, con María Teresa Martínez, de 18 años de edad, en diciembre de 1934. Nació un hijo, al que llamaron Edgardo, y cuando éste tenía un año de edad allá para mayo de 1936, la madre se vió obligada a demandar a su esposo en reclamación de alimentos para su hijo por tenerlos aquél abandonados. Fué condenado Fernández a pasarle a su hijo una pensión de $40 mensuales y la reconsideración de dicha sentencia le fué denegada. Posteriormente María Teresa Martínez obtuvo sentencia de divorcio en contra de José Fernández y como consecuencia le fué concedida la patria potestad y custodia del hijo habido en el matrimonio.

El día 3 de octubre de 1940 María Teresa Martínez radicó en la corte inferior una moción solicitando se citara a su ex esposo para que expusiera las razones por las cuales no debía ser condenado por desacato por no haber cumplido con los términos de la sentencia sobre alimentos, alegándose en dicha moción que Fernández había rebajado la pensión a $30, $25 y $20 en distintas fechas. Citado el demandado, antes de la comparecencia las partes sometieron una estipulación a la aprobación de la corte a virtud de la cual Fer-

nández se comprometió a seguir pasándole a su hijo $30 mensuales, en partidas de $15 quincenales. La estipulación fué aprobada el día 10 de octubre de 1940.

El día 1ro. de noviembre de 1940 José Fernández, uniendo a su padre Domingo Fernández como demandante, radicó en la corte inferior una petición solicitando se expidiera un auto de hábeas corpus contra María Teresa Martínez con el fin, según se dice en la súplica, de "que muestre causa, si alguna tuviere, por la cual no deba ser privada de la patria potestad sobre" su hijo "de conformidad con el artículo 166 del Código Civil de Puerto Rico, y por la cual no deba reintegrar dicho menor a la custodia de su abuelo paterno" . . . y "en definitiva que el referido menor quede bajo la custodia y el cuidado del demandante Domingo Fernández Martínez." Se funda la petición primordialmente en la alegación de que la demandada se halla viviendo en concubinato con otro hombre en la misma casa en que vive con su hijo Edgardo, y que la demandada en abril de 1940 dió a luz una hija natural la que inscribió como tal en el Registro Demográfico, siendo éstos ejemplos corruptores para el menor. Se alegó además en la petición que la demandada se muda de un lugar a otro con frecuencia, viviendo con el menor en habitaciones pequeñas y cerradas, antihigiénicas y de poca ventilación, como consecuencia de lo cual dicho menor se halla pálido y enfermizo y va con irregularidad a la escuela o no va a la misma de un todo. Se alegó además que el codemandante Domingo Fernández Martínez como abuelo paterno del menor es persona sobria y circunspecta y posee condiciones físicas, morales y económicas para mejor atender y cuidar al referido menor.

La demandada en su contestación negó que al presente se halle viviendo en concubinato con otro hombre, pero aceptó que había dado a luz a una hija natural, la que inscribió en el Registro Demográfico. Negó asimismo las demás alegaciones de la petición.

Celebrado el juicio correspondiente la corte inferior declaró sin lugar la petición y contra esa sentencia los demandantes establecieron el presente recurso imputando a dicha corte los siguientes errores:

"*Primer error.*—La corte *a quo,* al entender en el presente caso, actuó con pasión, prejuicio y parcialidad desfavorables a los demandantes apelantes, al basar conclusiones en hechos no probados, tales como que el peticionario José Fernández actuó movido por el interés de evadir el pago de alimentos al menor, y al basar sus conjeturas en actuales o probables investigaciones fuera del tribunal, sin dar a los apelantes una oportunidad para intervenir en las mismas.

"*Segundo error.*—La corte *a quo* cometió manifiesto error de derecho al permitir, contra la objeción de los demandantes apelantes, que la demandada apelada hiciese la grave acusación contra el padre peticionario de que éste había repudiado su paternidad sobre el menor, basándose en una supuesta carta que no fué presentada en evidencia, lo cual influyó singularmente en el ánimo del juez sentenciador para denegar el recurso.

"*Tercer error.*—La corte *a quo* cometió grave error al desestimar la petición del presente caso, no obstante la conducta inmoral de la demandada apelada, obviamente perjudicial al bienestar del menor, y no obstante la oportunidad que se le brinda de vivir en un hogar sano y moral.

"*Cuarto y último error.*—El tribunal inferior erró. y abusó de su discreción al condenar a los peticionarios al pago de las costas, y, especialmente, al pago de honorarios de abogado."

 Se basa el primer error en un incidente que ocurrió al comenzar la vista del caso en la corte inferior y solicitar la demandada que se citara para otra fecha a uno de sus testigos que no había podido comparecer. Ocurrió lo siguiente según aparece de la página dos de la Transcripción de Evidencia:

"Sr. Juez: Entonces oiremos el testimonio de esa señora el lunes a las 9 de la mañana.

"Demandante: Con derecho nosotros a presentar prueba con respecto a la declaración de ella.

"Sr. Juez: Sí, *y la corte, en estos casos, está autorizada para hacer investigaciones fuera del tribunal.* Vamos a oír la prueba de los demandantes." (Bastardillas nuestras.)

Sostienen los apelantes que, debido a esa frase que aparece en bastardillas, supra, la corte inferior resolvió el caso de acuerdo con investigaciones que hizo fuera del tribunal y que, por tanto, la cláusula del debido proceso de ley (*due process of law*) de la Enmienda 14 de la Constitución Federal y el artículo 2 de la Ley Orgánica de Puerto Rico quedaron infringidos por la corte *a quo*.

Es cierto que la corte inferior se expresó en la forma ya expuesta, pero nada hay en la relación del caso y opinión que emitió en apoyo de su sentencia que indique que en realidad realizara investigación alguna fuera del tribunal. Desde luego que aun cuando los poderes y discreción que por ley y por la jurisprudencia se reconocen a las cortes en el ejercicio de *parens patriæ* son amplísimos y no están ellas obligadas a seguir estrictamente las reglas de evidencia en la tramitación de estos casos, esa discreción y poderes no pueden ejercitarse en violación de los derechos constitucionales reconocidos a todas las partes en un litigio. En 46 C. J. 1252, sec. 30, bajo el tópico "Parent and Child", se expone la doctrina general aplicable, en esta forma:

"Aunque las reglas generales sobre admisibilidad de evidencia son ordinariamente aplicables en procedimientos para determinar la custodia de un niño, una amplia latitud en el examen es permitida sobre la cuestión de la capacidad del padre para tener la custodia del niño."

Y más adelante en la sección 32 se dice lo siguiente:

"La corte que oye el caso debe quedar satisfecha de si el niño está impropiamente retenido y si su comodidad y educación son atendidas debidamente. La corte no está restringida a las fórmulas ordinarias de juicio o sujeta a ninguna forma particular de procedimiento; puede ordenar que el niño sea traído ante ella y puede examinarlo privadamente y puede también valerse de *affidavits* o de otros medios razonables y propios de información."

En la nota 54 en esta misma página se cita el caso de *State* v. *Thompson,* 117 La. 102, 41 So. 367, en el que se

resolvió que en un pleito sobre la custodia de un niño menor de edad la sentencia de divorcio que se había alegado en la petición pero que no fué objeto de prueba, no podía tomarse en consideración al determinar la controversia.

En el caso de *Cooke* v. *Cooke,* 248 P. 83, citado por la corte inferior para otro fin, se resolvió que no era admisible como prueba en un caso de esta naturaleza y de acuerdo con la ley de evidencia de Utah, la transcripción de evidencia y una opinión del juez en relación con un decreto o sentencia dictado por una corte de Canadá, cuando no estaban debidamente autenticados ni formaban parte del legajo de la sentencia en dicho caso. Dijo la corte:

"La opinión del juez o corte así ofrecida en evidencia no está incluída en la transcripción ni certificada por el registrador (*registrar*), ni hay referencia a ella ni se radicó con el registrador ni en su oficina, ni llegó a formar parte del récord de la corte, ni fué certificada por él ni tiene el sello de la corte. Esto es así también en cuanto a la transcripción de evidencia que sólo aparece certificada por el taquígrafo oficial . . .

"Somos por lo tanto de opinión que el 'referee' excluyó correctamente esta evidencia ofrecida y que nosotros no debemos con propiedad considerarla y que todo lo que está debidamente ante nosotros para ser considerado es el . . . legajo de la sentencia certificado por el registrador a que nos hemos referido."

A nuestro juicio la regla que debe prevalecer es la de que no obstante reconocer que las cortes de distrito tienen una amplia discreción para investigar todo lo que al mejor bienestar de un menor convenga y que deben interpretar liberalmente las reglas de evidencia para llegar a dicho fin, esto no quiere decir que puedan hacer investigaciones particulares a espalda de las partes interesadas y sin darles la oportunidad de intervenir en dichas investigaciones, interrogar y contrainterrogar a los testigos y de presentar cualquier prueba que deseen. Puede surgir un caso en que ciertos hechos lleguen a conocimiento de la corte que deban ser investigados antes de resolverse en definitiva sobre la custodia del

menor. Esa investigación puede y debe realizarse pero con la intervención que la ley reconoce a las partes en litigio.

Las razones que tuvo la corte inferior para denegar la petición aparecen expuestas en la relación del caso y opinión así:

"Está firmemente establecido que en esta clase de procedimientos la única cuestión a determinar es el bienestar del menor—*Llopart* v. *Mesorana,* 49 D.P.R. 250; *Chabert* v. *Sánchez,* 29 D.P.R. 241 y cuando se trata de niños de tiernos años como en este caso circunstancias verdaderamente excepcionales y extraordinarias deben alegarse y probarse para quitar la custodia de ellos a la madre, máxime cuando por sentencia firme, ella tiene la patria potestad del hijo en controversia. Véase *Re Pryse,* 41 L. R. A. (N. S.) páginas 575 a la 578.

"La prueba no demostró en absoluto que el niño viviera en habitaciones pequeñas y cerradas, antihigiénicas y de poca ventilación y mucho menos que estuviera pálido y enfermizo. En cuanto a no ir a la escuela es de conocimiento judicial que los niños no son admitidos en las escuelas hasta que no arriban a la edad de siete años.

"Aunque es un hecho admitido por la demandada que vivió en concubinato con otro hombre y tuvo con él una hija, es lo cierto que a la fecha del juicio vivía honestamente y ya había roto sus relaciones ilícitas, la propia hermana de su ex-marido, con quien vivía la demandada declaró que nada tenía que reprocharle y que ella cuidaba y atendía mucho al niño.

"Aunque no aprobamos la conducta de la demandada creemos que dadas todas las circunstancias que rodean este caso, el bienestar del menor requiere que éste continúe bajo el cuidado y calor de la madre, a pesar de sus relaciones ilícitas.

. . . . . . . . .

Además estamos convencidos que las relaciones ilícitas cesaron y que la demandada, de acuerdo con la propia declaración de la hermana del ex-esposo peticionario, observa ahora una buena conducta, y atiende y cuida al hijo a quien profesa afecto y cariño.

"Bajo estas condiciones, debemos mantener el statu quo y no entregar el niño a persona que aunque familiares no ocupan una mejor posición que la de un extraño. El propio padre para pasarles alimentos, ha tenido que ser obligado a ello por procedimientos judiciales y la madre cuya declaración creemos ha manifestado que nunca lo visita. Los abuelos paternos, bajo cuya custodia se in-

tenta poner al niño, no conocen a éste y jamás le han hecho demostraciones de cariño. Además estamos convencidos de que este procedimiento de hábeas corpus ha sido instituído con el propósito único de evadir la condena por alimentos recaída en el caso civil número 25,237. Obsérvese que en Oct. de 1940 la demandante radica una moción en dicho caso para castigar al ahora peticionario por desacato por no haber cumplido con la orden de la corte obligándole a pasar alimentos; la orden para mostrar causa es dejada sin efecto a virtud de una estipulación de las partes hecha en 9 de Oct. de 1940 y antes de transcurrir un mes se presenta esta petición de hábeas corpus a pesar de que la demandada hacía ocho meses que había tenido el hijo y cuando ya sus relaciones amorosas habían terminado. Está firmemente resuelto que cuando motivos impropios, y no el cariño al hijo, impulsaron la presentación del hábeas corpus éste debe denegarse, no vamos tampoco a alterar el statu quo y embarcar al niño en una aventura nueva entregándoselo a personas desconocidas que no pueden tenerle el cariño y afecto que hasta ahora le han demostrado la madre y sus tías, donde ocasionalmente pasa sus temporadas.''

Hemos examinado detenidamente toda la prueba presentada en el juicio y las conclusiones a que llegó la corte inferior están ampliamente sostenidas por ella, sin que pueda sostenerse que obtuviera ninguna prueba adicional fuera del tribunal. La corte inferior, de acuerdo con los hechos probados y que hemos expuesto al principio en esta opinión, estuvo justificada en llegar a la conclusión de que José Fernández al presentar la petición de hábeas corpus actuó movido por el interés de evadir el pago de los alimentos al menor. Esos hechos son susceptibles de esa inferencia o interpretación sin necesidad de investigaciones fuera del tribunal. No se cometió el primer error.

Tampoco el segundo, pues la corte inferior no basó su sentencia, como hemos visto de la opinión antes transcrita, en el hecho de que el padre había repudiado su paternidad sobre el menor. Nada hay en el caso que indique que el haber permitido a la demandada declarar en relación con la carta que dijo se le había extraviado, influyeran en el ánimo del juez sentenciador para denegar la petición.

556

El tercer señalamiento ataca, desde otro ángulo, la apreciación que de la prueba hizo la corte inferior al desestimar la petición y al ejercitar su discreción como *parens patriæ* dejando al menor al cuidado de su madre, no obstante haber ésta admitido las relaciones ilícitas que tuvo y que dieron lugar al nacimiento de su hija natural.

La prueba demostró que esas relaciones ilícitas habían terminado muchos meses antes de presentarse la petición y que la hermana de su ex-marido, con quien vivía la demandada a la fecha del juicio, declaró que observaba una buena conducta y cuidaba y atendía a su hijo. Es cierto que el marido de esta testigo la contradijo, pero la corte inferior no dió crédito a su declaración. Además, convenimos con la conclusión a que llegó dicha corte en cuanto a que, de acuerdo con la prueba, "los abuelos paternos, bajo cuya custodia se intenta poner al niño, no conocen a éste y jamás le han hecho demostraciones de cariño" y que bajo estas circunstancias no debe "alterarse el statu quo y embarcar al niño en una aventura nueva entregándoselo a personas desconocidas que no pueden tenerle el cariño y afecto que hasta ahora le han demostrado la madre y sus tías, donde ocasionalmente pasa sus temporadas."

Somos de opinión que la corte inferior, después de considerar toda la prueba y las circunstancias del caso, hizo buen uso de su discreción al mantener el statu quo y dejar al menor bajo la custodia de la madre y asimismo al condenar a los demandantes al pago de $50 en concepto de honorarios de abogado y que *procede, por tanto, confirmar la sentencia apelada.*