SENTENCIA
I
La Sra. Milagros Patricia Rivera Ríos y el Sr. Arturo José Rivera Molina contrajeron matrimonio el 22 de diciembre de 1997 y de esa unión nació el menor A.L.R.R. en abril de 1998. Luego de cinco años, el 1 de febrero de 2002 el Tribunal de Primera Instancia decretó el divorcio solici-tado por ambas partes mediante un procedimiento ex parte. En dicha petición de divorcio por consentimiento mutuo, las partes estipularon que la patria potestad sería compartida mientras que la custodia del menor se le debe-ría otorgar a la señora Rivera Ríos. Así el tribunal lo concedió. También se acordó cómo se ajustarían las relacio-nes paterno-filiales.
Puesto que hubo varias dificultades entre la señora Rivera Ríos y el señor Rivera Molina en cuanto al derecho de este último a relacionarse con su hijo, el señor Rivera Molina acudió al tribunal para solicitar que se encontrara a la señora Rivera Ríos incursa en desacato. Subsiguiente-mente, se refirió el caso al Programa de Relaciones de Fa- *679 milia y éste rindió un informe, en el que se recomendó “que los padres busquen ayuda profesional para establecer la comunicación adecuada como padres”. Apéndice, pág. 98. Entre los hallazgos, se señala que no hay comunicación entre los padres y que al momento de la entrevista con la trabajadora social, la comunicación entre ellos se lograba a través de sus abogados. En la Resolución de 29 de septiem-bre de 2004 el Tribunal de Primera Instancia acogió las recomendaciones contenidas en el Informe Social Forense de la Oficina de Relaciones de Familia sobre el plan de visitas. Además, ordenó a los padres buscar ayuda profe-sional y así restablecer la comunicación entre ellos para el beneficio del menor y para asegurar que puedan acordar los cambios que alteren el plan de visitas de manera que cumplan con las órdenes del tribunal, ya que el trabajo del señor Rivera Molina le obliga a viajar constante-mente.
El 11 de mayo de 2005 el señor Rivera Mplina solicitó que se le concediera la custodia compartida y solicitó la intervención del tribunal para que determinara el lugar donde debía estudiar el menor, ya que los padres no se podían poner de acuerdo. El señor Rivera Molina intere-saba que su hijo ingresara a la Antilles Consolidated School Systems en la base militar Buchanan, ya que así tendría el beneficio de una educación libre de costo, al igual que los servicios de psicólogos, tutorías, transporta-ción y campamentos, por ser empleado del Gobierno federal. Para poder matricular al menor, el señor Rivera Molina entendía que era necesario ejercer la custodia del menor. Específicamente, adujo que la escuela requería que quien solicitara admisión tuviera “parental rights” res-pecto al menor. (1) La señora Rivera Ríos se opuso a la mo- *680 ción de custodia compartida alegando que la petición res-pondía únicamente al interés del padre de ahorrar los gastos escolares y de terapias de su hijo. Ella alegó que estaría dispuesta a considerar dicha escuela como escuela secundaria, pero que al momento el menor no tenía la “ma-durez académica” necesaria y entendía que el menor aún necesitaba cursar estudios en un sistema “individualizado” como el Colegio Montessori, donde el niño pueda aprender a su paso,(2)
El 4 de agosto de 2005 el tribunal concedió la petición de custodia compartida, a pesar de no haber un acuerdo a tales efectos entre los padres del menor. Específicamente, señaló que “en el presente caso no se dan algunos de los elementos a considerar, según exigidos en Torres Ojeda,.... como por ejemplo, que entre ellos haya una excelente co-municación y que no medien desavenencias entre ellos”. Apéndice, pág. 49. Fundamentando su determinación en el poder de parens patriae del Estado, el tribunal determinó que el menor debería cursar estudios en la escuela del Fuerte Buchanan. En lo pertinente, el tribunal indicó que
... la promovida nada indicó que nos incline a concluir que no es adecuado ni beneficioso para el menor o que lo vaya a per-judicar académica o socialmente. Por ende, estamos obligados a concluir que el cambio a la escuela del Fuerte Buchanan redunda en el mejor interés [del menor]. (Enfasis suplido.) Apéndice, págs. 47-48.
Así, procedió a declarar “con lugar” la moción para otor-gar la custodia compartida, por ser ello “requisito indispensable para que el niño pueda beneficiarse de esta escuela”. Apéndice, pág. 48.
Inconforme con esta determinación, la señora Rivera Ríos recurrió al Tribunal de Apelaciones para aducir los mismos fundamentos de su oposición a la moción presen- *681 tada por su ex marido en el foro primario! No obstante, el tribunal apelativo confirmó la resolución dándole deferen-cia al tribunal de instancia en cuanto a su apreciación de lo que resultaba en el mejor interés del menor. Resolvió que “[n]o hay duda que fue basándose en esa determinación que el [Tribunal de Primera Instancia], ausente de con-flicto en cuanto al acuerdo del plan de relaciones paterno filiales, concedió la custodia compartida”. Apéndice, pág. 12.
Así, pues, la señora Rivera Ríos acudió ante nosotros mediante un recurso de certiorari. Alegó que el Tribunal de Apelaciones erró al confirmar el tribunal de instancia en contra de lo resuelto por el Tribunal Supremo en Torres, Ex parte, 118 D.P.R. 469 (1987). El 3 de marzo de 2006 expe-dimos el recurso. Posteriormente, ambas partes presenta-ron sendos alegatos y, con el beneficio de sus comparecen-cias, pasamos a resolver.
II
El Artículo 153 del Código Civil establece el deber de los padres con patria potestad respecto a sus hijos no emanci-pados de alimentarlos, educarlos, cuidar su salud física y mental y representarlos legalmente en las acciones que les aproveche. 31 L.P.R.A. see. 601. Véase Torres, Ex parte, supra. Como corolario de la patria potestad, la custodia le otorga a los padres el deber de tener físicamente a los hijos en su compañía. Luego de un divorcio, la custodia de los hijos no emancipados debe concederse al cónyuge que, se-gún la sana discreción del tribunal, servirá mejor a los intereses del menor. Nudelman v. Ferrer Bolívar, 107 D.P.R. 495 (1978); Marrero Reyes v. García Ramírez, 105 D.P.R. 90 (1976). La determinación de custodia no afecta los dere-chos que tenga un padre con patria potestad de educar a sus hijos y alimentarlos, pero el cónyuge a quien el tribu *682 nal no le haya concedido la custodia tendrá derecho a rela-cionarse con el menor en la manera que el tribunal determine. Arts. 152 y 107 del Código Civil, 31 L.P.R.A. sees. 591 y 383; Sterzinger v. Ramírez, 116 D.P.R. 762 (1985); Centeno Alicea v. Ortiz, 105 D.P.R. 523 (1977); Picó v. Mejía, 52 D.P.R. 728 (1938).
En todo caso, la adjudicación de la patria potestad y custodia se determinará a base del criterio del mejor bien-estar del menor. Ortiz v. Vega, 107 D.P.R. 831 (1978); Nudelman v. Ferrer, supra; Marrero v. García, supra; Fernández v. Martínez, 59 D.P.R. 548 (1941). Estas determin-aciones no constituyen cosa juzgada, pero reiteradamente hemos dicho que ese estado de derecho no debe alterarse salvo circunstancias excepcionales. Santana Medrano v. Acevedo Osorio, 116 D.P.R. 298 (1985); Centeno Alicea v. Ortiz, supra; Negrón v. Lugo, 59 D.P.R. 870 (1942). Cuando a un padre se le haya privado de la custodia de un hijo menor de edad, éste tendrá derecho a recobrarla si le de-muestra a satisfacción del tribunal que revertir la determi-nación original sirve a los mejores intereses y el bienestar del menor. Art. 107 del Código Civil, supra; Nudelman v. Ferrer Bolívar, supra.
Nuestra jurisprudencia ha sido consecuente en sostener que en nuestra jurisdicción el interés del menor está reves-tido del más alto interés público y que los tribunales, en protección de ese interés y en el ejercicio del poder de pa-rens patriae, tienen amplias facultades y discreción. Martínez v. Ramírez Tió, 133 D.P.R. 219 (1993); Sterzinger v. Ramírez, supra; Ortiz v. Vega, supra. Por ejemplo, cuando los padres con patria potestad no pueden llegar a acuerdos respecto al menor, los tribunales tienen la facultad de ad-judicar lo que proceda porque “el ejercicio de una eminente patria potestad de El Pueblo de Puerto Rico es superior a la de los padres”. Negrón v. Lugo, supra, pág. 875. Ahora bien, esta facultad tampoco es absoluta y no llega al extremo de permitirle al tribunal obviar el claro mandato de *683 ley y de la doctrina. Martínez v. Ramírez Tío, supra; Fernández v. Martínez, supra.
La custodia no es otra cosa que un conjunto de derechos y obligaciones que surge de la tenencia física del menor y es corolario de la patria potestad. Art. 153 del Código Civil, supra; Torres, Ex parte, supra. Se ha reconocido en esta jurisdicción la capacidad de los tribunales de asignar la custodia compartida a ambos padres, siempre que tal de-terminación sea para el bienestar del menor. Así, en Torres, Ex parte, supra, establecimos que para que un tribunal pueda conceder la custodia compartida, es un requisito necesario, pero no suficiente, que haya un acuerdo a tal fin por parte de ambos padres. Además, el tribunal deberá ha-cer un análisis de la conveniencia de sostener tal acuerdo y si realmente redunda en beneficio del menor. En lo perti-nente, expresamos que
[e]n ausencia de causa justificada, sujeto el análisis a un preclaro discernimiento, la formulación de consciencia judicial decisoria en todo caso responderá —entre otros— a la ponde-ración de varios factores. Ello persigue determinar si existe una probabilidad real de que el esquema de patria potestad y custodia compartida propuesto habrá de funcionar entre los ex cónyuges que la solicitan. Es menester un acuerdo previo de que la patria potestad y custodia de sus hijos será compartida. ... A tales efectos, el tribunal investigará si los padres poseen la capacidad, disponibilidad y firme propósito de asumir la responsabilidad de criar los hijos conjuntamente. Ello implica superar desavenencias personales, y por imperativo, sostener adecuada comunicación para adoptar aquellas decisiones con-juntas que redunden en beneficio y los mejores intereses del menor. En esta misión, el tribunal examinará si entre las par-tes existe un grado manifiesto de hostilidad y tensiones —lejos de ser pasajeras— sean sustanciales y si existe una probabili-dad real de conflictos futuros que hagan inoperable el acuerdo. (Énfasis suplido.) Torres, Ex parte, supra, págs. 481-482.
*684 III
En el caso que nos ocupa, el Tribunal de Primera Ins-tancia estaba facultado para resolver los conflictos que pu-dieran surgir entre los padres con patria potestad y bajo el poder de parens patriae podía adjudicar cuál escuela resul-taría en el mejor interés del menor. Sin embargo, la deci-sión de otorgarle al padre la custodia compartida del me-nor por la sola razón de que ello facilita el que éste pueda ingresar a determinada escuela favorecida por el padre no se conforma a los criterios establecidos en la jurisprudencia. El tribunal no tomó en consideración las características del padre o si hubo algún cambio en las necesidades del menor que ameritara alterar el estado de derecho. El único cambio en la situación del menor desde la adjudicación original de custodia y la petición del señor Rivera Molina es el interés de éste en matricular a su hijo en una escuela que, a su entender, le requiere que éste tenga sobre su hijo “parental rights”. El tribunal entendió que estaba “obligado” a resolver a favor de la preferencia de señor Rivera Molina por la escuela en el Fuerte Buchanan porque la señora Rivera Ríos “nada indicó que nos incline a concluir que no es adecuado ni beneficioso para el menor”. Apéndice, págs. 47-48. Al hacerlo erró, pues co-rrespondía al cónyuge que solicitó el cambio, es decir, al padre, demostrar que el cambio propendería, efectiva-mente, a los mejores intereses del menor, al punto que se-ría contrario a sus mejores intereses negar lo solicitado. En vez, el tribunal resolvió, sin explicación alguna, que la es-cuela propuesta por el padre era la “mejor institución” para el niño y que ello era fundamento suficiente para alterar la determinación original que otorgó la custodia a la madre, según estipularon los cónyuges al divorciarse.
La decisión del Tribunal de Primera Instancia de modi-ficar la determinación original de custodia respondió a cri-terios ajenos al mejor bienestar del menor, pues se basó *685 solamente en que la custodia compartida era un “requisito indispensable para que el niño pueda beneficiarse de esta escuela”. Apéndice, pág. 48. El interés del tribunal en que tenga efectos prácticos su apreciación sobre la escuela en la que debería ingresar el menor no es fundamento suficiente para alterar el estado de derecho. La decisión recurrida constituyó, pues, un abuso de discreción y un uso indebido de la facultad de parens patriae.
Más aún, la situación entre los ex cónyuges no favorece la concesión de custodia compartida, pues no solamente falta el acuerdo entre ellos, sino que la relación entre los ex cónyuges es claramente hostil, hasta el punto que el tribunal de instancia ordenó que recurrieran a consejería para ayudarlos a restablecer la comunicación entre ellos. Es evi-dente que los padres del menor no han podido superar sus desavenencias personales ni sostener una adecuada comu-nicación que les permita llegar a decisiones conjuntas en beneficio del menor. Existe un grado manifiesto de hostili-dad y tensión que haría muy probable la ocurrencia de con-flictos futuros. Es precisamente esta situación la que des-cribimos en Torres, Ex parte, supra, como la menos idónea, pues es indispensable la colaboración de los padres para hacer operante una determinación de custodia compartida.
Por los fundamentos antes expuestos, revocamos las de-terminaciones de los foros inferiores que otorgaron la cus-todia compartida por éstas no atender los mejores intereses del menor.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Rebollo López disintió con opinión escrita. El Juez Asociado Señor Rivera Pérez disintió sin opinión.
(Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

 Aunque definió “parental rights” como “lo que bajo nuestro sistema conoce-mos como el derecho a ejercer la patria potestad”, el Tribunal de Primera Instancia nunca se adentró a examinar si el reglamento de la escuela requería además la custodia compartida. Alegato de la parte recurrida y en solicitud de desestimación, pág. 2.

 También manifestó interés en que el menor recibiera una educación católica donde pueda hacer la.primera comunión, y nombró el Colegio Nuestra Señora del Carmen como el colegio de su interés.