EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Ex parte: | |
| Milagros Rivera Ríos<br>Arturo José Rivera Molina | Certiorari |
| | 2008 TSPR 70 |
| Milagros Patricia Rivera Ríos | 173 DPR ____ |
| Peticionaria | |

Número del Caso: CC-2005-1139

Fecha: 5 de mayo de 2008

Tribunal de Apelaciones:

               Región Judicial de Carolina, Panel XII

Juez Ponente:

               Hon. Héctor Cordero Vázquez

Abogada de Milagros Patricia Rivera Ríos:

               Lcda. Aitza Caldera Del Valle

Abogados de Arturo José Rivera Molina:

               Lcda. Magda C. Morales Torres<br>               Lcda. Marilena Román Gandulla

Materia: Custodia

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*Ex parte:*

    Milagros Rivera Ríos
   Arturo José Rivera Molina

Milagros Patricia Rivera Ríos                 *Certiorari*
      Peticionaria

                     CC-2005-1139

*SENTENCIA*

En San Juan, Puerto Rico, a 5 de mayo de 2008.

I

La señora Milagros Patricia Rivera Ríos y el señor Arturo José Rivera Molina contrajeron matrimonio el 22 de diciembre de 1997 y de esa unión nació el menor ALRR en abril de 1998. Luego de cinco años, el 1 de febrero de 2002 el Tribunal de Primera Instancia decretó el divorcio solicitado por ambas partes mediante un procedimiento ex parte. En dicha petición de divorcio por consentimiento mutuo, las partes estipularon que la patria potestad sería compartida mientras que la custodia del menor se le debería otorgar a la señora Rivera Ríos. Así el tribunal lo concedió. También se acordó cómo se ajustarían las relaciones paterno-filiales.

Puesto que hubo varias dificultades entre la señora Rivera Ríos y el señor Rivera Molina en cuanto al derecho de este último a relacionarse con su hijo, el señor Rivera Molina acudió al tribunal solicitando que se encontrara a la señora Rivera Ríos incursa en desacato. Subsiguientemente, se refirió el caso al Programa de Relaciones de Familia y éste rindió un informe, en el que se recomendó "que los padres busquen ayuda profesional para establecer la comunicación adecuada como padres." Entre los hallazgos, se señala que no hay comunicación entre los padres y al momento de la entrevista con la trabajadora social, la comunicación entre ellos se lograba a través de sus abogados. En la resolución del 29 de septiembre de 2004, el Tribunal de Primera Instancia acogió las recomendaciones contenidas en el Informe Social Forense de la Oficina de Relaciones de Familia sobre el plan de visitas y ordenó a los padres buscar ayuda profesional para ayudarlos a restablecer la comunicación entre ellos para el beneficio del menor y para asegurar que puedan acordar los cambios que alteren el plan de visitas y así poder cumplir con las órdenes del tribunal, ya que el trabajo del señor Rivera Molina le obliga a viajar constantemente.

El 11 de mayo de 2005, el señor Rivera Molina solicitó que se le concediera la custodia compartida y solicitó la intervención del tribunal para que

determinara el lugar donde debía estudiar el menor, ya que los padres no se podían poner de acuerdo. El señor Rivera Molina interesaba que su hijo ingresara a la Antilles Consolidated School Systems en la base militar Buchanan, ya que así tendría el beneficio de una educación libre de costo, al igual que los servicios de psicólogos, tutorías, transportación y campamentos, por ser empleado del gobierno federal. Para poder matricular al menor, el señor Rivera Molina entendía que era necesario ejercer la custodia del menor. Específicamente adujo que la escuela requería que quien solicitara admisión tuviera "parental rights" respecto al menor.[1] La señora Rivera Ríos se opuso a la moción de custodia compartida alegando que la petición respondía únicamente al interés del padre de ahorrar los gastos escolares y de terapias de su hijo. Ella alegó que estaría dispuesta a considerar dicha escuela como escuela secundaria, pero que al momento el menor no tenía la "madurez académica" necesaria y entendía que el menor aún necesitaba cursar estudios en un sistema "individualizado" como el Colegio Montessori, donde el niño pueda aprender a su paso.[2]

---

[1] Aunque definió "parental rights" como "lo que bajo nuestro sistema conocemos como el derecho a ejercer la patria potestad", el Tribunal de Primera Instancia nunca se adentró a examinar si el reglamento de la escuela requería además la custodia compartida.

[2] También manifestó interés en que el menor recibiera una educación católica donde pueda hacer la primera comunión y nombró el Colegio Nuestra Señora del Carmen como uno de su interés.

El 4 de agosto de 2005, el tribunal concedió la petición de custodia compartida, a pesar de no haber un acuerdo a tales efectos entre los padres del menor. Específicamente señaló que "en el presente caso no se dan algunos de los elementos a considerar, según exigidos en Torres Ojeda,… como por ejemplo, que entre ellos haya una excelente comunicación y que no medien desavenencias entre ellos." Fundamentando su determinación en el poder de *parens patriae* del Estado, el tribunal determinó que el menor debería cursar estudios en la escuela del Fuerte Buchanan. En lo pertinente, el tribunal indicó que:

> la promovida nada indicó que nos incline a concluir que no es adecuado ni beneficioso para el menor o que lo vaya a perjudicar académicamente o socialmente. Por ende, estamos obligados a concluir que el cambio a la escuela del Fuerte Buchanan redunda en el mejor interés [del menor]. (Énfasis nuestro.)

Así, procedió a declarar con lugar la moción para otorgar la custodia compartida por ser ello "requisito indispensable para que el niño pueda beneficiarse de esta escuela."

Inconforme con esta determinación, la señora Rivera Ríos recurrió al Tribunal de Apelaciones aduciendo los mismos fundamentos de su oposición a la moción presentada por su ex-marido en el foro primario. No obstante, el tribunal apelativo confirmó la resolución dándole deferencia al tribunal de instancia en cuanto a su apreciación de lo que resultaba en el

mejor interés del menor. Resolvió que "no hay duda que fue basándose en esa determinación que el Tribunal de Primera Instancia, ausente de conflicto en cuanto al acuerdo del plan de relaciones paterno filiales, concedió la custodia compartida."

Así, pues, la señora Rivera Ríos acudió ante nosotros mediante un recurso de *certiorari*. Alegó que el Tribunal de Apelaciones erró al confirmar el tribunal de instancia en contra de lo resuelto por el Tribunal Supremo en Torres Ojeda, Ex parte, 118 D.P.R. 469 (1987). El 3 de marzo de 2006, expedimos el recurso. Posteriormente, ambas partes presentaron sendos alegatos y con el beneficio de sus comparecencias, pasamos a resolver.

II

El artículo 153 del Código Civil establece el deber de los padres con patria potestad respecto a sus hijos no emancipados de alimentarlos, educarlos, cuidar su salud física y mental y representarlos legalmente en las acciones que les aproveche. 31 L.P.R.A. sec. 601; Ex parte Torres, supra. Como corolario de la patria potestad, la custodia le otorga a los padres el deber de tener físicamente a los hijos en su compañía. Luego de un divorcio, la custodia de los hijos no emancipados debe concederse al cónyuge que según la sana discreción del tribunal mejor servirá a los intereses del menor. Nudelman v. Ferrer Bolívar, 107 D.P.R. 495 (1978);

Marrero Reyes v. García Ramírez, 105 D.P.R. 90 (1976). La determinación de custodia no afecta los derechos que tenga un padre con patria potestad de educar a sus hijos y alimentarlos, pero el cónyuge a quien el tribunal no le haya concedido la custodia tendrá derecho a relacionarse con el menor en la manera que el tribunal determine. Arts. 152 y 107 del Código Civil, 31 L.P.R.A. sec. 591 y 383; Sterzinger v. Ramírez, 116 D.P.R. 762 (1985), Centeno v. Ortiz, 105 D.P.R. 523 (1977); Picó v. Mejía, 52 D.P.R. 728 (1938).

En todo caso, la adjudicación de la patria potestad y custodia se determinará a base del criterio del mejor bienestar del menor. Nudelman v. Ferrer, supra; Ortiz v. Vega, 107 D.P.R. 831 (1978); Marrero v. García, supra; Fernández Martínez v. Martínez, 59 D.P.R. 548 (1941). Estas determinaciones no constituyen cosa juzgada, pero reiteradamente hemos dicho que ese estado de derecho no debe alterarse salvo circunstancias excepcionales. Santana v. Acevedo, 116 D.P.R. 298 (1985); Centeno v. Ortiz, supra; Negrón Muñoz v. Lugo, 59 D.P.R. 870 (1942). Cuando a un padre se le haya privado de la custodia de un hijo menor de edad, éste tendrá derecho a recobrarla si le demuestra a satisfacción del tribunal que revertir la determinación original sirve a los mejores intereses y bienestar del menor. Art. 107 del Código Civil, supra; Nudelman v. Ferrer, supra.

Nuestra jurisprudencia ha sido consistente en sostener que en nuestra jurisdicción el interés del menor está revestido del más alto interés público y que los tribunales, en protección de ese interés y en el ejercicio del poder de *parens patriae*, tienen amplias facultades y discreción. Martínez v. Ramírez Tió, 133 D.P.R. 219 (1993) Ortiz v. Vega, supra; Sterzinger v. Ramírez, supra. Por ejemplo, cuando los padres con patria potestad no pueden llegar a acuerdos respecto al menor, los tribunales tienen la facultad de adjudicar lo que proceda porque "el ejercicio de una eminente patria potestad de El Pueblo de Puerto Rico es superior a la de los padres" Negrón v. Lugo, supra, pág. 875. Ahora bien, esta facultad tampoco es absoluta y no llega al extremo de permitirle al tribunal obviar el claro mandato de ley y de la doctrina. Martínez v. Ramírez, supra; Fernández v. Martínez, supra.

La custodia no es otra cosa que un conjunto de derechos y obligaciones que surge de la tenencia física del menor y es corolario de la patria potestad. Art. 153, *supra*; Ex parte Torres, supra. Se ha reconocido en esta jurisdicción la capacidad de los tribunales en asignarle la custodia compartida a ambos padres, siempre que tal determinación sea para el bienestar del menor. Así, en Ex parte Torres, supra, establecimos que para que un tribunal pueda conceder la custodia compartida, es un requisito necesario, pero no

suficiente, que haya un acuerdo a tal fin por parte de ambos padres. Además, el tribunal deberá hacer un análisis de la conveniencia de sostener tal acuerdo y si realmente redunda en beneficio del menor. En lo pertinente expresamos que:

> [e]n ausencia de causa justificada, sujeto el análisis a un preclaro discernimiento, la formulación de consciencia judicial decisoria en todo caso responderá—entre otros—a la ponderación de varios factores. Ello persigue determinar su existe una probabilidad real de que el esquema de patria potestad y custodia compartida propuesto habrá de funcionar entre los ex cónyuges que los solicitan. Es menester un acuerdo previo de que la patria potestad y custodia de sus hijos será compartida… A tales efectos, el tribunal investigará si los padres poseen la capacidad, disponibilidad y firme propósito de asumir la responsabilidad de criar los hijos conjuntamente. Ello implica superar desavenencias personales, y por imperativo, sostener adecuada comunicación para adoptar aquellas decisiones conjuntas que redunden en beneficio y los mejores intereses del menor. En esta misión, el tribunal examinará si entre las partes existe un grado manifiesto de hostilidad y tensiones—lejos de ser pasajeras—sean sustanciales y si existe una probabilidad real de conflictos futuros que hagan inoperable el acuerdo. (Énfasis suplido.) Ex parte Torres, supra, págs. 481-482.

III

En el caso que nos ocupa, el Tribunal de Primera Instancia estaba facultado para resolver los conflictos que pudieran surgir entre los padres con patria potestad y bajo el poder de *parens patriae* podía adjudicar cuál escuela resultaría en el mejor interés del menor. Sin embargo, la decisión de otorgarle al

padre la custodia compartida del menor por la sola razón de que ello facilita el que éste pueda ingresar a determinada escuela favorecida por el padre no se conforma a los criterios establecidos en la jurisprudencia. El tribunal no tomó en consideración las características del padre o si hubo algún cambio en las necesidades del menor que ameritara alterar el estado de derecho. El único cambio en la situación del menor desde la adjudicación original de custodia y la petición del señor Rivera Molina es el interés de éste en matricular a su hijo en una escuela que, a su entender, le requiere que éste tenga sobre su hijo "parental rights". El tribunal entendió que estaba "obligado" a resolver a favor de la preferencia de señor Rivera Molina por la escuela en el Fuerte Buchanan porque la señora Rivera Ríos "nada indicó que nos incline a concluir que no es adecuado ni beneficioso para el menor". Al hacerlo, erró, pues correspondía al cónyuge que solicitó el cambio, es decir, el padre, demostrar que el cambio propendría, efectivamente, a los mejores intereses del menor, al punto que sería contrario a sus mejores intereses negar lo solicitado. En vez, el tribunal resolvió, sin explicación alguna, que la escuela propuesta por el padre era la "mejor institución" para el niño y que ello era fundamento suficiente para alterar la

determinación original que otorgó la custodia a la madre, según estipularon los cónyuges al divorciarse.

La decisión del Tribunal de Primera Instancia de modificar la determinación original de custodia respondió a criterios ajenos al mejor bienestar del menor pues se basó solamente en que la custodia compartida era un "requisito indispensable para que el niño pueda beneficiarse de esta escuela." El interés del tribunal en que tenga efectos prácticos su apreciación sobre la escuela en la que debería ingresar el menor no es fundamento suficiente para alterar el estado de derecho. La decisión recurrida constituyó, pues, un abuso de discreción y un uso indebido de la facultad de *parens patriae*.

Más aún, la situación entre los ex cónyuges no favorece la concesión de custodia compartida pues no solamente falta el acuerdo entre ellos, sino que la relación entre los ex cónyuges es claramente hostil, hasta el punto que el tribunal de instancia ordenó que recurrieran a consejería para ayudarlos a reestablecer la comunicación entre ellos. Es evidente que los padres del menor no han podido superar sus desavenencias personales ni sostener una adecuada comunicación que les permita llegar a decisiones conjuntas en beneficio del menor. Existe un grado manifiesto de hostilidad y tensión que haría muy probable la ocurrencia de conflictos futuros. Es

precisamente esta situación la que describimos en Ex parte Torres, supra, como la menos idónea, pues es indispensable la colaboración de los padres para hacer operante una determinación de custodia compartida.

Por los fundamentos antes expuestos, revocamos las determinaciones de los foros inferiores otorgando la custodia compartida por éstas no atender los mejores intereses del menor.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López disiente con opinión escrita. El Juez Asociado señor Rivera Pérez disiente sin opinión.


                          Aida Ileana Oquendo Graulau
                        Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Ex Parte:

Milagros Patricia Rivera Ríos
Arturo José Rivera Molina

                            CC-2005-1139  CERTIORARI

Milagros Patricia Rivera Ríos

    Peticionaria


OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ


San Juan, Puerto Rico, a 5 de mayo de 2008


Es norma trillada que los tribunales apelativos <u>no</u> debemos intervenir con la apreciación de la prueba que realizan los tribunales de instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto <u>Rodríguez</u> v. <u>Nationwide Insurance</u>, 156 DPR 614 (2002); <u>Arguello</u> v. <u>Arguello</u>, 155 DPR 62 (2001). Ello, <u>como es sabido</u>, debido a que es el juez de instancia el que está en mejor posición de aquilatar esa prueba ya que es dicho magistrado el que tiene la oportunidad de observar a los testigos, su manera de declarar, sus gestos, titubeos y contradicciones, lo que le permite, de ordinario, hacer una más acertada apreciación de credibilidad.

Aun cuando el presente caso <u>no</u> trata, necesariamente, sobre apreciación de credibilidad, <u>en nuestra opinión este caso presenta una situación similar o parecida a la determinación de credibilidad a la que hace referencia la jurisprudencia antes citada</u>. Nos explicamos.

Aquí se trata de dos adultos que anteponen sus sentimientos negativos, venganzas y rencillas personales al mejor bienestar de su hijo menor de edad. Aparentemente <u>no</u> se pueden poner de acuerdo en cuanto a ningún aspecto de la vida de ese hijo --que es el tesoro más valioso que tienen en su vida-- rayando sus actuaciones en la irracionalidad.

Ese juez de instancia es, precisamente, el que ha estado por largo tiempo lidiando con esas dos personas, tratando de resolver esa impermisible e incomprensible situación. Dicho de otra forma, ese magistrado es el miembro de la judicatura puertorriqueña que está en mejor posición de saber cuál es el mejor bienestar de ese menor, víctima inocente de esa situación de terquedad.

No sabemos, a ciencia cierta, si la decisión que tomó el juez de instancia es la más correcta. <u>Lo que sí sabemos es que está en mejor posición que cualquiera de los integrantes de este Tribunal para formar juicio al respecto</u>. Dicho de otra manera, las intervenciones y contacto que, <u>personal y directamente</u>, este magistrado de instancia ha tenido con las partes <u>le han permitido ir formando gradualmente una opinión sobre cuál es el curso de acción más beneficioso para el menor</u>.

Es correcto que dicho magistrado no expresó las palabras mágicas de que entendía que su determinación ordenando que el menor fuera a determinada escuela y que la custodia fuera compartida[3], era en "beneficio de los mejores intereses del menor". A nosotros nos resulta obvio, sin embargo, que esa fue su razón de decidir. Por lo menos, no se nos ha demostrado que dicha decisión esté permeada de pasión, prejuicio o error manifiesto de su parte, lo cual debería ser suficiente para que este Tribunal se abstenga de sustituir su criterio por el de dicho magistrado.

Ello no obstante, en el día de hoy y desde este lejano estrado apelativo, la mayoría de los integrantes del Tribunal, aplicando de forma automática unas decisiones de este Tribunal, entienden y resuelven que la informada y experimentada decisión del juez de instancia debe ser revocada, pasando por alto y descartando ese *"expertise"* del juez de instancia con esta materia y con este caso en particular.

Ante la arbitraria actuación de la Mayoría no podemos hacer otra cosa que dejar constancia de nuestra inconformidad con esta decisión.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[3] Sobre cuándo procede decretar que la patria potestad y custodia sea compartida por ambos padres divorciados, véase: Ex Parte Torres, 118 D.P.R. 469 (1987).