EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Josette Machargo Olivella<br><br>Peticionario<br><br>v.<br><br>Fernando Martínez Schmidt<br><br>Recurrido | Certiorari<br><br>2013 TSPR 54<br><br>188 DPR ____ |

Número del Caso: CC-2013-2

Fecha: 17 de abril de 2013

Tribunal de Apelaciones:

      Región Judicial de San Juan, Panel II

Abogados de la Parte Peticionaria:

      Lcdo. Efraín E. Rivera Pérez
      Lcdo. Rafael J. Machargo Olivella

Abogado de la Parte Recurrida:

      Lcda. Xaira L. Santiago Agosto

Materia: Resolución del Tribunal con Opinión de Conformidad y Voto Particular Disidente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Josette Machargo Olivella

    Peticionaria

        v.                    CC-2013-2

Fernando Martínez Schmidt

    Recurrido

RESOLUCIÓN

San Juan, Puerto Rico, 17 de abril de 2013

Atendida la *Solicitud de Certiorari* presentada por la parte peticionaria de epígrafe, se provee no ha lugar.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Kolthoff Caraballo emitió una Opinión de Conformidad a la que se une la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Rivera García. La Juez Asociada señora Rodríguez Rodríguez emitió un Voto Particular Disidente al que se unen el Juez Presidente señor Hernández Denton, la Jueza Asociada señora Fiol Matta y el Juez Asociado señor Estrella Martínez.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jossette Machargo Olivella

    Peticionaria

        v.                           CC-2013-2     Certiorari

Fernando Martínez Schmidt

    Recurrido

Opinión de Conformidad emitida por el Juez Asociado señor Kolthoff Caraballo a la cual se unen la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Rivera García

San Juan, Puerto Rico, a 17 de abril de 2013.

Ciertamente es correcta la decisión tomada por la mayoría de esta Tribunal en el presente caso. Entiendo sabio y correcto en Derecho que, al igual que determinó el Tribunal de Apelaciones, nos abstengamos de intervenir con la determinación del Tribunal de Primera Instancia (TPI).

I

Los hechos concernientes a esta controversia se detallan a continuación, conforme surgen del expediente y de la Sentencia que en torno a esta controversia emitimos el 30 de junio de 2011.

El 23 de diciembre de 2009, en el contexto de un pleito de divorcio, la peticionaria, señora

Jossette Machargo Olivella, y el recurrido, señor Fernando Martínez Schmidt, suscribieron una *Estipulación de Custodia, Patria Potestad y Relaciones Paterno Filiales* para sus dos hijas gemelas menores de edad. En ese momento las menores contaban con 7 años de edad. No obstante, aproximadamente un mes y medio después, la peticionaria instó una solicitud para que se suspendieran las relaciones paterno filiales. Alegó que, por disposición del tribunal, las menores estaban recibiendo terapia educativa con la Dra. Jeanette Rosselló[1] y señaló que el recurrido, quien originalmente participó en el proceso terapéutico, había abandonado las terapias en noviembre de 2009. Además, la peticionaria adujo que tras varios incidentes suscitados durante las relaciones paterno filiales, las menores estaban renuentes a relacionarse con su padre, cuya presunta conducta iba en detrimento del bienestar de las niñas. Así, pues, solicitó al tribunal que suspendiera temporalmente las relaciones paterno filiales hasta tanto el recurrido se integrara a las terapias de las niñas y la terapeuta determinase que éstas estaban preparadas para relacionarse con él.

---

[1] Por las propias alegaciones de la peticionaria, quien en el cuarto señalamiento de error del recurso que presentara ante este Tribunal el 2 de enero de 2013, alegó que la doctora Rosselló ha sido la terapeuta de las menores "por más de cuatro (4) años" y, según surge del expediente, la intervención inicial de la doctora Rosselló con las menores es prácticamente contemporánea a la orden del Tribunal de Primera Instancia designándola como terapista de las menores. Dicha Orden se dictó el 24 de octubre de 2008. Véase Apéndice del Recurso de *Certiorari*, Pág. 146. Es evidentemente entonces, que en cualquiera que sea la capacidad que la doctora Rosselló ha intervenido con las menores objeto de la controversia en este caso, la inmensa mayoría del tiempo lo ha hecho como recurso del Tribunal y bajo su jurisdicción.

A raíz de esta petición, las representantes legales de ambas partes y la Procuradora de Asuntos de Familia, como defensora judicial de las menores, acordaron reunirse con la doctora Rosselló, terapeuta de las niñas, para que ésta expresara su opinión profesional en torno a las referidas relaciones paterno filiales. Según surge de una moción informativa presentada por la Procuradora de Asuntos de Familia, la doctora Rosselló resaltó la importancia de que las menores se relacionasen con su padre. No obstante, recomendó que, previo a ello, se celebraran unas relaciones terapéuticas iniciales entre las niñas y su padre en un ambiente neutral. Estas relaciones terapéuticas tendrían el propósito de restablecer el plan de relaciones paterno filiales que había sido estipulado por las partes. Así las cosas, las partes acogieron las recomendaciones de la doctora Rosselló y estuvieron de acuerdo con que fuera ella quien dirigiera las referidas reuniones terapéuticas.

Posteriormente, luego de que se celebrara la primera reunión terapéutica, el recurrido presentó ante el foro de instancia una moción urgente en la que expresó su incomodidad con el trabajo realizado por la doctora Rosselló. Cuestionó tanto su profesionalismo como su metodología y alegó que el proceso terapéutico, en vez de ayudar a mejorar, había empeorado la situación.[2] Además, expuso que no se relacionaba con sus hijas desde enero de 2010. Así, pues, solicitó al foro primario que:

---

[2] Cabe destacar que el recurrido es psiquiatra de profesión.

(1) ordenara el restablecimiento de las relaciones paterno filiales según estipuladas originalmente; (2) ordenara que se le hiciera una evaluación con un psiquiatra pediátrico a las menores y, de entenderlo necesario, comenzaran terapias; (3) cambiara a la terapeuta de las menores ya que el proceso terapéutico con esta no estaba siendo efectivo.

En oposición, la peticionaria señaló que si bien era cierto que las menores no se habían relacionado con su padre desde enero de 2010, esto se debía a la negativa de este a someterse al proceso de terapia de las niñas. De igual forma, insistió en la necesidad de que se celebraran las relaciones terapéuticas sugeridas por la doctora Rosselló y se reafirmó en su petición de que el tribunal suspendiera temporeramente las relaciones paterno filiales hasta tanto la terapeuta determinara que las niñas estaban preparadas para relacionarse con su padre.

Examinados los escritos de ambas partes, el foro de instancia ordenó a la Procuradora de Asuntos de Familia que expresara su posición. Esta señaló que debía permitírsele a la doctora Rosselló llevar a cabo las sesiones terapéuticas conforme a su criterio profesional. Asimismo, señaló que hasta tanto la terapeuta no estableciera lo contrario, no recomendaba que las relaciones paterno filiales se reanudaran sin la celebración previa de las sesiones terapéuticas.

El 1 de junio de 2010, el Tribunal de Primera Instancia, amparándose en los argumentos de la Defensora Judicial en el *Informe Fiscal,* denegó la solicitud del recurrido. Posteriormente, y reiterando su insatisfacción respecto de la gestión profesional de la doctora Rosselló, el recurrido solicitó del TPI que le autorizara a someter a las menores a una nueva evaluación psicológica, esta vez, ante un perito sometido por dicha parte. El TPI también denegó esta nueva solicitud del recurrido.

Inconforme, el recurrido acudió al foro apelativo intermedio, quien confirmó las determinaciones del TPI. Sin embargo, aduciendo que el aquí recurrido había perdido la confianza profesional en la doctora Rosselló, el foro apelativo intermedio ordenó que las terapias dirigidas a restablecer las relaciones paterno filiales se condujeran, no por la doctora Rosselló, sino por un perito designado por el TPI. Inconforme con la determinación del tribunal apelativo intermedio, la peticionaria acudió por primera vez ante nos mediante *certiorari* (CC-11-0913), el cual acogimos.

Así las cosas, el 30 de junio de 2011, revocamos al Tribunal de Apelaciones ordenando que se celebrara una vista en la que se dilucidara los méritos de la solicitud del aquí recurrido, a los efectos de que se sustituyera a la doctora Rosselló y se nombrara a un nuevo terapeuta para que condujera las reuniones terapéuticas dirigidas a restablecer las relaciones paterno-filiales. En

cumplimiento con lo ordenado, el TPI señaló una vista para el 24 de octubre de 2011. No obstante, en esa vista las partes desistieron de la presentación de prueba y estipularon encomendar el proceso terapéutico de reanudación de las relaciones paterno-filiales a una trabajadora social privada, la Sra. Silvia Burgos. Esta, sin embargo, finalmente no estuvo disponible, por lo que el TPI designó al trabajador social Sr. Jari R. Moreno Sánchez (señor Moreno Sánchez).

Según surge de un Informe fechado 13 de enero de 2012, suscrito por el señor Moreno Sánchez, el 6 de enero de 2012 se celebró una reunión entre las menores y el padre. El señor Moreno Sánchez describió esta reunión como una en la cual las niñas compartieron con el padre de forma satisfactoria. Sobre este particular, el Trabajador Social expresó que al inicio de la sesión las menores se mostraron muy apegadas a mamá sujetándola fuertemente y abrazándola, pero luego que la mamá salió de la sala de terapia las niñas poco a poco se relacionaron con su padre de forma más abierta y espontánea. En el Informe se señaló además, que las niñas conversaron con el padre e incluso le preguntaron sobre unos peces que estaban en su casa; que recibieron regalos del padre y se tomaron fotos con él. Sin embargo, indicó que al finalizar la sesión las niñas volvieron a asumir un comportamiento poco expresivo y se observaron calladas o distanciadas hacia la figura paterna.

En el mencionado Informe se reportó, además, que en la segunda cita, programada para el 13 de enero de 2012, las menores se negaron a bajarse del auto de la madre, a entrar a la oficina del señor Moreno Sánchez y a relacionarse con el recurrido. Al describir lo sucedido en dicha ocasión, el Trabajador Social enfatizó en la importancia de la colaboración de la peticionaria en el proceso, señalando el rol ejecutivo que esta asumió de forma pasiva, y que esperaba que la peticionaria asumiera un rol activo, más enérgico del que había empleado hasta ese momento, en la dirección de restablecer las relaciones paterno-filiales. También el Trabajador Social resaltó que la peticionaria, por ser la madre custodia, tiene una responsabilidad mayor para que las relaciones con otros familiares se den y se lleven a cabo de una forma saludable.

En vista de la situación surgida en la segunda reunión programada por el señor Moreno Sánchez, éste y la doctora Rosselló presentaron un Informe conjunto fechado 16 de abril de 2012. En el mismo ambos recomendaron que se detuviera el proceso de reanudar las relaciones paterno-filiales, e hicieron referencia a la necesidad de que los padres resolvieran mediante terapia los graves problemas de comunicación que confrontan, y que fueran éstos quienes manejaran el proceso de reanudación de las relaciones paterno-filiales. Sobre este particular, en el último párrafo de su Informe ambos profesionales señalaron que ante la indisposición de las menores,

entendían que no era apropiado la continuación del proceso, pues las niñas se observan afectadas por la situación.

Así, el señor Moreno Sánchez y la doctora Rosselló informaron que habían determinado detener momentáneamente las relaciones paterno-filiales, y recomendaron que se brindara un seguimiento en el área emocional de las niñas para que se trabajase con este asunto y con el trauma que todo esto pudiera estar ocasionándole a las niñas. Por último, señalaron que esperaban que con el tiempo las niñas pudieran llegar a comprender la importancia que es el mantener una relación saludable con su padre, y que estén en disposición positiva para verlo.

Como consecuencia de todo esto, el 1 de mayo de 2012, el TPI celebró una vista en la que señaló que había leído y analizado los informes presentados por los peritos. Que se había reunido con los abogados de las partes en cámara. Que había escuchado a las partes y había hecho un análisis exhaustivo del caso. Señaló que no habían propuestas concretas para resolver el impase entre las partes y que la mejor manera de trabajar el problema era salir del escenario terapéutico, para dar paso a un escenario relajado, con la presencia de algún recurso familiar aceptable para ambas partes y que permitiera el contacto inicial con el padre.

En vista de lo anterior, el día 15 de junio de 2012, el TPI se trasladó y se constituyó en el área comedor del centro comercial San Patricio Plaza donde

celebró una vista para observar un encuentro casual entre el recurrido y sus hijas. Como resultado de esa vista el foro de primera instancia emitió una extensa y bien fundamentada Resolución en la que, entre otras cosas, describe lo ocurrido en centro comercial. Señala la juez de instancia, que tan pronto las menores vieron a su padre se aferraron fuertemente al cuerpo de su madre y comenzaron a llorar, resistiéndose a hablar con el padre o a estar a su lado. Incluso, las menores no quisieron siquiera que el peticionario las tocara. Ninguna de las menores accedió a acercarse o permitir que el padre se les acercara o les hablara, a pesar de que ambas partes intentaron convencerlas. Así, y en lo pertinente, el TPI concluyó en su Resolución lo siguiente, lo que citamos *in extenso*, por su importancia:

> A la luz de los hechos antes reseñados y del análisis doctrinal aplicable al caso de autos, resulta claro que desde el punto de vista estrictamente jurídico aquí no existe impedimento legal alguno para que el demandante pueda compartir con sus hijas en la forma en que originalmente estipulada por las partes. Así se desprende del hecho de que en ninguna instancia del trámite del caso se ha alegado ni demostrado que existan circunstancias de peligro o riesgo a la salud o seguridad de las niñas por razón de llevarse a cabo las relaciones paterno-filiales. Sin embargo, es también un hecho innegable la resistencia o rechazo que las menores han presentado a dicha relación, y que esta situación ha ido "in crescendo" con el transcurso del tiempo, a pesar de las numerosas sesiones de terapia recibidas por las niñas con el propósito de reanudar las mismas.
>
> Como puede apreciarse del historial del caso, estamos ante una muy penosa situación en la cual la relación de apego que existía entre el demandado y sus hijas, (que todos los

expertos identificaron en la etapa temprana de este litigio) se ha ido transformado en una actitud de total rechazo y desvinculación de las menores con su padre, ello como resultado de la sucesión de disputas entre las partes durante y después del divorcio.

Contrario a lo que fuera la intención original de las partes de buscar ayuda profesional para que ellos y sus hijas pudieran lidiar con el ajuste al proceso de separación, lo cierto es que además de la naturaleza de la controversia, su duración, las actitudes desplegadas por las partes, el resultado de la intervención terapéutica se convirtió en una fuente adicional de conflicto. Dicha situación no solo ha impedido que se lograra un entendimiento entre las partes para poner fin al litigio, sino que ha ocasionado grave daño emocional a las menores. De ahí que el resultado neto del proceso haya sido que la prolongación de la ausencia de la relación paterno-filial ha producido un rechazo mayor de las niñas hacia el padre, la cual ha ido a la par con una mayor identificación, apego y hasta dependencia de las menores con la madre.

Según se desprende del resumen que hicimos del historial terapéutico familiar en este caso las hijas menores de las partes han sido sometidas a un largo y agobiante proceso terapéutico, en el cual han participado de numerosas entrevistas e intervenciones. Sin embargo, los resultados del mismo en la conducta de las niñas y de las partes revelan que el proceso se ha tornado cuando menos inefectivo, si no contraproducente. Como cuestión de hecho, a pesar de que ha habido amplia y plena oportunidad para que las terapias rindieran frutos positivos, el proceso de reunificación familiar se encuentra estancado, y las reacciones y la conducta de las menores evidencian que no hay progreso. Resulta claro además, que el comportamiento de las menores refleja que no están manejando adecuadamente el proceso.

A nuestro juicio, la situación de estancamiento e inefectividad de este proceso obedece a varios factores, a saber: (1) la incapacidad de las partes para superar sus desavenencias personales y mantener a sus hijas fuera de la contienda; (2) la falta de un compromiso auténtico y proactivo de las partes para promover y facilitar las relaciones entre sí y las relaciones de las niñas con ambos padres; (3) la falta de

cooperación de los miembros del núcleo familiar de una y otra parte no promueve ni facilita el logro de la meta de reunificación familiar; (4) la ausencia de un plan terapéutico individualizado y personalizado para atender las diferencias en personalidad de las niñas y su relación de hermanas, así como la conducta y la respuesta de cada una de ellas hacia la relación con el padre y la familia paterna; y (5) la ausencia de un plan que en algún momento incluyera actividades concretas dirigidas a la reanudación de las relaciones paterno-filiales. Aunque todos estos elementos inciden en el resultado que hoy tenemos, no hay duda de que según han señalado los peritos en trabajo social, sicología y siquiatría que han intervenido en este caso, el factor de mayor peso y perjuicio ha sido la ausencia total de una comunicación respetuosa y responsable entre los padres durante todo el proceso de separación y de litigio.

En vista de lo anterior el foro de instancia determinó lo siguiente:

En consideración a lo anterior, en protección de los mejores intereses de las menores y como alternativa para la solución de esta compleja situación familiar, resolvemos lo siguiente:

1. Por entender que el extenso proceso terapéutico con la Dra. Jeannette Rosselló *[Dra. Rosselló]* se ha detenido y tornado inefectivo, y que al presente la relación del padre con las menores se ha deteriorado en lugar de progresar, ordenamos el cese de intervenciones de las menores con dicha terapeuta. Disponemos además, el cese de toda intervención pericial, ya sea evaluativa o terapéutica, con las menores, así como el proceso de reanudación de relaciones paterno-filiales en este momento y hasta tanto otra cosa disponga el Tribunal.

2. Se ordena a las partes iniciar de inmediato un proceso de terapia dirigido a capacitarlos para establecer un proceso de diálogo efectivo que les ayude a derribar las barreras de comunicación que les afectan en el plano individual y en la relación con sus hijas.

3. Como parte del proceso terapéutico aquí ordenado, las partes prepararán un plan paulatino y escalonado de encuentros familiares dirigido a promover, facilitar y reanudar las relaciones paterno-filiales, sin intervención o interferencia de terceros.

A los efectos antes señalados, y para evitar controversias ulteriores entre partes con relación a la selección del profesional que conducirá el proceso terapéutico aquí dispuesto, se ordena a la Procuradora de Relaciones de Familia, que en el plazo de 5 días provea un listado de entre (3) y (5) posibles recursos para ofrecer dichos servicios, de los cuales el Tribunal seleccionará el (la) terapeuta. La Procuradora se asegurará de que los recursos sugeridos no tengan vínculo personal o profesional alguno con las partes. Se señalará vista de seguimiento en plazo de cuatro (4) meses para evaluar el progreso de las terapias entre las partes.

Cumplan las partes con lo ordenado por el Tribunal en el mejor interés y bienestar de sus hijas.

## II

La pregunta que tuvo ante sí esta Curia al evaluar la expedición de este recurso se resume en lo siguiente: ¿abusó de su discreción el foro inferior al ordenar el cese de toda intervención de la Dra. Jeannette Rosselló con las menores en este caso?

Es claro que, ante una controversia, impase o circunstancia real, los tribunales de justicia, en su obligación de *parens patriae* y en la búsqueda del imperativo del "mejor bienestar" de un menor, tienen el poder no sólo de tomar la acción que tomó la honorable juez de instancia en este caso, sino incluso de: imponer la asignación de un terapeuta en particular; decidir a

qué escuela asistirá finalmente el menor; suspender provisional o permanentemente relaciones paterno o materno filiales; remover menores de la custodia de sus padres; decidir sobre la adopción o no adopción de un menor; privar de la custodia a uno o a ambos padres, y hasta privarlos de *patria potestad*.[3]

En fin, nuestra jurisprudencia ha sido consecuente en sostener que en nuestra jurisdicción el interés del menor está revestido del más alto interés público y que los tribunales, en protección de ese interés y en el ejercicio del poder de *parens patriae,* tienen amplias facultades y discreción[4].

Ahora bien, de igual manera hemos establecido que ese poder no es uno irrestricto.[5] Es menester entonces, al evaluar la determinación de un tribunal de primera instancia en el uso de su poder de *parens patriae*, determinar si a la luz de las circunstancias o de la prueba presentada, este no abusó de su discreción.

Los asuntos que se atienden en nuestras salas de familia son sin duda particulares, y de ordinario,

---

[3] Ex parte Rivera Ríos, 173 D.P.R. 678 (2008) (Sentencia); Ex parte Rivera Báez,170 D.P.R. 678 (2007); Peña v. Peña, 164 D.P.R. 949 (2005); Martínez v. Ramírez Tió, 133 D.P.R. 219 (1993); Sterzinger v. Ramírez, 116 D.P.R. 762 (1985); Nudelman v. Ferrer Bolívar, 107 D.P.R. 495 (1978); Ortiz v. Vega, 107 D.P.R. 831 (1978); Centeno Alicea v. Ortiz, 105 D.P.R. 523 (1977); Marrero Reyes v. García Ramírez, 105 D.P.R. 90 (1976); Rodríguez v. Gerena, 75 D.P.R. 900 (1954); Fernández v. Martínez, 59 D.P.R. 548 (1941); Picó v. Mejía, 52 D.P.R. 728 (1938).

[4] Martínez v. Ramírez Tió, *supra*; Sterzinger v. Ramírez, *supra*; Ortiz v. Vega, *supra*.

[5] Pueblo v. Hernández Villanueva, 179 D.P.R. 872 (2010); Pueblo v. Ortega Santiago, 125 D.P.R. 203 (1990); Pueblo v. Sánchez González, 90 D.P.R. 197, 200 (1964).

complicados. Sin embargo, las complicaciones a las que se enfrenta un juez de familia son en un sentido muy diferentes a las que se consideran en otras salas de justicia. Esto, porque distinto en gran manera a los asuntos que se atienden en otras ramas del Derecho, los casos de familia envuelven derechos que se enmarcan en profundas emociones y sentimientos, y que requieren del juez de familia, además de un fino conocimiento del Derecho, una gran sensibilidad humana y empatía. Controversias que requieren del o la juez la capacidad de mantener en todo tiempo el control de su caso, pero salvaguardando a su vez los derechos de las partes que llegan a su sala buscando la mayoría de las veces, además de justicia, el desahogo de un torrente de emociones, muchas de ellas negativas. En un sinnúmero de ocasiones las partes llegan a la sala del juez sin saber siquiera qué es lo que realmente quieren, o cuál es la verdadera motivación de su causa de acción. Le corresponde entonces al juez discernir con fineza tal intención y enmarcarla dentro de lo que el Derecho provee. Cuando, para completar el cuadro, en medio de ese barrunto de emociones y sentires yace el mejor bienestar de uno o más menores, se requiere además del juez de familia temple y sabiduría para escuchar a todos los recursos a su disposición, y actuar de manera firme pero sosegada.

Por otro lado, recordemos que en un sentido pragmático las decisiones de un juez de familia casi siempre son "interlocutorias", pues la mayoría de sus

determinaciones nunca se constituyen en cosa juzgada.[6] Esto es, debido a los cambios en circunstancias, actuaciones o actitudes de las partes en un caso, un juez puede mantenerse por años tomando decisiones sobre un mismo asunto. **Así, con el tiempo el juez de familia aprende a discernir con meridiana claridad no solo lo que encierran las controversias en cada caso, sino los personajes de cada drama de la vida real que tiene ante sí.** Eso, difícilmente ocurre en otras salas de nuestra augusta Rama.

### III

Al estudiar detenidamente el expediente del caso de autos, no albergo dudas con relación a que el Tribunal de Primera Instancias actuó de conformidad con el principio del mejor bienestar de las dos menores, y dentro de los parámetros de una sana discreción. Sin embargo, y como sabemos, la evaluación de lo que constituye el "mejor bienestar" de un menor parece ser un aspecto en lo que dos juzgadores rara vez puedan ponerse cien por ciento de acuerdo. Al contrario, en ocasiones encontramos tantas opiniones como juzgadores intervengan. Esto, a mi manera de ver, obedece en parte precisamente a la carga emocional y la responsabilidad que conlleva para un juez decidir lo que es lo mejor para una criatura que carece de la capacidad para valerse por sí misma, en contraposición con los intereses y sentimientos de las

---

[6] Santana Medrano v. Acevedo Osorio, 116 D.P.R. 298 (1985); Negrón v. Lugo, 59 D.P.R. 870 (1942).

personas más cercanas. Sobre todo, cuando el juez discierne que esas personas cercanas, a pesar de sus ofuscaciones, realmente aman al menor.

En situaciones como las del caso de autos, la discreción ejercida por el juez de instancia debe ser aquilatada a la luz de las circunstancias y dentro del contexto de lo que es razonable[7]. O dicho de otro modo, los foros apelativos debemos analizar si, dentro de las circunstancias, la actuación del foro de instancia fue irrazonable. Ahora bien, para poder determinar si es irrazonable la acción tomada por un Tribunal de Primera Instancia, debemos tener claro cuál fue en realidad la determinación tomada, y evaluarla, no aisladamente, sino en su contexto.

En la controversia del caso de autos, nótese que la decisión en torno a la doctora Rosselló no fue la única tomada por la honorable juez de instancia. Ante una situación en la que -al criterio de la juez que ha venido trabajando con diligencia el caso por largos meses o años- la situación de las menores lucía en un terrible deterioro, esta decide detenerlo todo, incluyendo las relaciones paterno filiales. De manera que, según puede interpretarse de la Resolución en cuestión y de la totalidad del expediente, lo que la juez de primera instancia intenta hacer es lograr una composición de lugar.

---

[7] Pueblo v. Hernández Villanueva, *supra*; Pueblo v. Ortega Santiago, *supra*; Pueblo v. Sánchez González, *supra*.

Ciertamente, y como surge claramente de la Resolución de la Juez, aparentemente los principales responsables del deterioro de las niñas en cuanto a la actitud para con su padre son precisamente las disputas entre los propios padres, y no necesariamente las terapias particulares que la doctora Rosselló les ha venido ofreciendo. ¿Debió entonces la juez de instancia permitir que continuaran esas terapias que "nada" tenían que ver con el proceso para mejorar las relaciones paterno filiales?

En primer lugar, no me parece real segmentar el proceso terapéutico de las menores al grado que podamos concluir que las terapias ofrecidas por la doctora Rosselló en nada se relacionan o tuvieran injerencia o efecto alguno –ya sea positivo o negativo– sobre las actitudes recientes de las menores para con el recurrido. Después de todo, y como lo señala la propia peticionaria, la intervención de la doctora Rosselló con las niñas se inicia a raíz de los serios problemas sobrevenidos con la separación de la pareja antes del divorcio. Siendo así, es lógico pensar que uno de los aspectos que trabajaría cualquier terapeuta en esas circunstancias, es la relación de las menores con el padre ausente del hogar (relación paterno filial), haciéndole entender que, aunque mamá y papá se han separado, ninguno de los dos se ha separado de ellas. Además, del expediente no surge que los servicios contratados inicialmente por la peticionaria para con la doctora Rosselló tengan su

génesis en alguna otra necesidad especial preexistente en las menores. Más bien, todo se ha relacionado siempre con el cuidado de la salud emocional de las niñas, a raíz de los conflictos surgidos con la separación de sus padres.

Por otro lado, consideremos además que en este caso el TPI no ha dado indicio alguno de pasión, prejuicio o parcialidad con relación a la evaluación de los servicios o las intervenciones de la doctora Rosselló en el caso. Al contrario, recordemos que en una ocasión, y antes de surgir esta nueva controversia, el recurrido le pidió a la honorable juez de instancia que sacara a la doctora Rosselló, y la Juez se negó rotundamente. Entonces, el recurrido acude al TA y este revoca la determinación del TPI y deja fuera del caso a la doctora Rosselló. Inconforme, la peticionaria acude ante nos por primera vez y este Tribunal revoca al TA.

En fin, ¿puede este Tribunal, a base del expediente de autos, determinar que la actuación de T.P.I. fue producto de la pasión, el prejuicio, la parcialidad o un de error manifiesto? Entiendo que no. A la luz de las circunstancias, ¿tenemos base para determinar que la actuación del foro de instancia fue una irrazonable? Nuevamente respondo en la negativa. Ciertamente, en este caso cabe decir lo siguiente:

> Ese juez de instancia es, precisamente, el que ha estado por largo tiempo lidiando con esas dos personas, tratando de resolver esa impermisible e incomprensible situación. Dicho de otra forma, ese magistrado es el miembro de la Judicatura puertorriqueña que está en mejor posición de saber cuál es el mejor bienestar

de ese menor, víctima inocente de esa situación de terquedad. No sabemos, a ciencia cierta, si la decisión que tomó el juez de instancia es la más correcta. **Lo que sí sabemos es que está en mejor posición que cualquiera de los integrantes de este Tribunal para formar juicio al respecto.** Dicho de otra manera, las intervenciones y el contacto que, **personal y directamente** este magistrado de instancia ha tenido con las partes **le han permitido ir formando gradualmente una opinión sobre cuál es el curso de acción más beneficioso para el menor.** (Énfasis en el original.)[8]

Por todo lo anterior, estoy conforme con la decisión de este Tribunal.

                              Erick V. Kolthoff Caraballo
                                   Juez Asociado

---

[8] Ex parte Rivera Ríos, *supra*, Págs. 686-687. Opinión Disidente del Juez Asociado señor Rebollo López.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Jossette Machargo Olivella<br><br>Peticionaria<br><br>v.<br><br>Fernando Martínez Schmidt<br><br>Recurrido | CC-2013-0002 |

Voto particular disidente emitido por la Juez Asociada señora Rodríguez Rodríguez al que se unen el Juez Presidente señor Hernández Denton, la Jueza Asociada señora Fiol Matta y el Juez Asociado señor Estrella Martínez

San Juan, Puerto Rico, a  17 de abril de 2013

Disiento del curso seguido por una mayoría de este Tribunal por entender que, nuevamente, queda rezagada la doctrina del mejor bienestar del menor. Además, al negarnos a expedir actuaríamos contrario a lo expresado anteriormente en esta controversia.

I

En el contexto de un pleito de divorcio, la señora Jossette Machargo Olivella y el señor Fernando Martínez Schmidt, suscribieron una Estipulación de Custodia, Patria Potestad y Relaciones Paterno Filiales sobre las dos hijas menores  habidas en matrimonio.[9]  Debido a dificultades en la implementación de las relaciones paternofiliales, las partes acordaron que la doctora Jeannette Rosselló, psicóloga y terapeuta de las menores,[10]  fuera la encargada de dirigir las terapias

---

[9] Las partes se divorciaron el 30 de enero de 2009 por la causal de separación.

[10] La doctora Rosselló ha sido la psicóloga de las menores por más de cuatro (4) años y desde antes del pleito de divorcio.

conducentes a restablecer las relaciones entre el padre y las menores.[11]

En ocasión anterior, este Tribunal tuvo la oportunidad de evaluar la solicitud del padre de la menor para que removieran a la doctora Rosselló de su función como terapeuta encargada de conducir las terapias para restablecer las relaciones entre el padre y las menores. *Véase* Apéndice de la petición de *certiorari* en el caso CC-2011-0193, págs. 289-302. En aquel entonces, el Tribunal de Apelaciones había confirmado la determinación del Tribunal de Primera Instancia de remover a la doctora Rosselló como terapeuta de las menores por entender, sin más, que el padre había perdido la confianza en la doctora. A tales efectos, este Tribunal modificó la determinación del foro apelativo intermedio y determinó que, al remover a la doctora Rosselló, no se consideraron los posibles efectos adversos que el cambio de terapeuta podría tener en las menores.

Por tal razón, ordenamos la celebración de una vista para que se dilucidaran los posibles efectos del cambio de terapeuta. La vista fue señalada para el 24 de octubre de 2011. No obstante, las partes optaron por estipular que la trabajadora social Silvia Burgos fuese la persona a cargo del proceso de reanudación de las relaciones paternofiliales. Ante la indisponibilidad de la señora Burgos y en ausencia de un acuerdo entre las partes, el 30 de noviembre de 2011 el foro primario designó al trabajador social Jari R. Moreno Sánchez para que éste se encargara del proceso de reanudación de las relaciones paternofiliales. Las partes estipularon que el señor Moreno

---

[11] Las terapias iban dirigidas a atender la renuencia de las menores en relacionarse con su padre.

Sánchez trabajaría en coordinación con la doctora Rosselló y la Procuradora de Asuntos de la Familia. Sin embargo, se acordó que en lo sucesivo la doctora Rosselló sólo atendería a las menores. Es decir, ésta no estaría a cargo del proceso de restablecer las relaciones paternofiliales.

Luego de las primeras dos citas terapéuticas con las menores, el 13 de enero de 2012 el señor Moreno Sánchez suscribió un informe en el que detalló el distanciamiento de las menores con la figura paterna.[12] En vista de la negativa de las menores en relacionarse con su padre, el 16 de abril de 2012 el señor Moreno Sánchez y la doctora Rosselló presentaron un informe conjunto en el que recomendaron que se detuviera el proceso de reanudación de las relaciones paternofiliales. Fundamentaron su recomendación en los graves problemas de comunicación entre el padre y la madre de las menores y el efecto de esta relación negativa sobre las menores. Contrario a la recomendación suscrita en el informe conjunto, el 1 de mayo de 2012 el foro primario celebró una vista en la que ordenó a las partes a entablar un diálogo para viabilizar las relaciones paternofiliales. Además, advirtió que de no lograrse un acuerdo se reanudarían las relaciones paternofiliales supervisadas por la trabajadora social del tribunal.

El Tribunal de Primera Instancia citó a las partes a una vista a celebrarse el 15 de junio de 2012. El día de la vista,

---

[12] En las terapias, el señor Moreno Sánchez evaluó el comportamiento y relación de las menores con su padre. Según el informe suscrito por el señor Moreno Sánchez, en la primera terapia las niñas mostraron apego a su madre pero luego de ésta salir de la sala de terapia las niñas poco a poco se relacionaron más abiertamente con su padre. No obstante, al finalizar la sesión de terapia las niñas se mostraron calladas y distantes a la figura de su padre. En la segunda cita de terapia las niñas se negaron a bajarse del carro de su madre.

el tribunal, súbitamente, se trasladó y se constituyó en el área del comedor del centro comercial de San Patricio Plaza para evaluar la interacción de las menores con sus progenitores. Nuevamente, las menores presentaron renuencia a relacionarse con su padre.[13] A raíz de la vista, el 2 de julio de 2012 el foro primario emitió una resolución en la que, entre otras cosas, resolvió lo siguiente:

> Por entender que el extenso proceso terapéutico con la Dra. Jeannette [Rosselló] se ha detenido y tornado inefectivo, y que al presente la relación del padre con las menores se ha deteriorado en lugar de progresar, ordenamos el cese de intervenciones de las menores con dicha terapeuta. Disponemos además, el cese de toda intervención pericial, ya sea evaluativa o terapéutica, con las menores, así como el proceso de reanudación de relaciones paterno-filiales en este momento y hasta tanto otra cosa disponga este Tribunal.
> *Véase* Apéndice de la petición de *certiorari*, pág. 132.

La señora Machargo Olivella solicitó reconsideración, la cual fue declarada sin lugar por el foro primario. Inconforme, acudió ante el Tribunal de Apelaciones y alegó, en lo pertinente, que erró el foro primario por arbitrariamente privar a las niñas de continuar recibiendo las terapias con la doctora Rosselló. Mediante resolución del 25 de octubre de 2012, el foro apelativo intermedio confirmó la determinación del Tribunal de Primera Instancia. Insatisfecha, la señora Machargo Olivella acude ante nuestra consideración mediante petición de *certiorari*.

II

---

[13] Las menores, tan pronto vieron a su padre en el centro comercial, se aferraron a su madre, comenzaron a llorar y resistieron acercarse a su padre. Véase Apéndice de la petición de *certiorari*, pág. 123.

En nuestro ordenamiento jurídico la institución de las relaciones paternofiliales está revestida de un alto interés público y social. *Rexach v. Ramírez Vélez*, 162 D.P.R. 130 (2004). Corolario del poder de *parens patriae*, el Estado deba velar por que dentro de esta relación cada menor se desarrolle en un entorno adecuado. *Peña v. Peña*, 164 D.P.R. 949 (2005). Si bien el derecho de un padre o madre de relacionarse con el menor es de alta jerarquía, este derecho cede ante la facultad *parens patriae* investida en el Estado. *Id.* pág. 959.

El Estado no debe ejercer tal facultad en el vacío o fundamentado en concepciones filosóficas sobre cuál es el bienestar óptimo de un menor en el abstracto. Al contrario, cada controversia debe mirarse en atención a las particularidades y hechos materiales que le rodean para determinar, conforme a los hechos, cuál es el mejor bienestar del menor. Particularmente, cuando el proceso de las relaciones paternofiliales usualmente se enmarca en una relación emocionalmente conflictiva entre los progenitores. Dentro de este contexto, debe mirarse con detalle el posible efecto de nuestras determinaciones en la cotidianidad de los menores.

La controversia ante nuestra consideración es simple: si procede la remoción de la doctora Rosselló como terapeuta de las menores por ésta no haber sido efectiva en el restablecimiento de las relaciones paternofiliales. Para fundamentar esta determinación, el foro primario repasó aritméticamente la cantidad de visitas de las menores a la oficina de la doctora Rosselló. Ante el cuantioso número de visitas y la falta de un progreso en el restablecimiento de las relaciones

paternofiliales, el tribunal concluyó que las terapias con la doctora Rosselló se habían tornado ineficaces.

Disiento del proceder seguido por el foro primario y avalado por una mayoría de este Tribunal. El tribunal sentenciador abusó de su discreción al no considerar los posibles efectos adversos de remover a la doctora Rosselló con quien, por los pasados cuatro (4) años, las menores han desarrollado lazos de afecto y confianza. Máxime cuando del expediente del caso surge que la doctora Rosselló no estaba a cargo de dirigir las terapias conducentes al restablecimiento de las relaciones paternofiliales.

Además, aun considerando que la doctora estuviese a cargo de las terapias conducentes al restablecimiento de las relaciones paternofiliales, el derecho del padre a relacionarse con las menores debe evaluarse en relación con el mejor bienestar de éstas. Recordemos que "cualquier conflicto que un tribunal perciba entre intereses ajenos y el mejor interés de un menor se debe resolver a favor del menor". *Ortiz v. Meléndez*, 164 D.P.R. 16, 28 (2005).

Anteriormente, en ocasión de evaluar la petición del señor Martínez Schmidt de que se removiera a la doctora Rosselló como terapeuta de las menores, señalamos que:

> No nos parece razonable . . . que tal determinación se haga sin antes considerar el posible efecto adverso que podría tener dicho cambio en el bienestar de las menores en este caso, sobre todo cuando existen alegaciones de que la Dra. [Rosselló] goza de la confianza de las menores.
> Entendemos que un cambio de terapeuta como el solicitado por el señor Martínez Schmidt debe ordenarse sólo si las circunstancias lo ameritan. . . .[L]o deseable es minimizar cualquier efecto perjudicial que los cambios en el proceso terapéutico puedan tener sobre las menores.

*Véase* Apéndice de la petición de *certiorari* en el caso CC-2011-0193, págs. 299-300.

A su vez señalamos que:

[E]l tribunal debe tomar en cuenta, entre otras cosas: las razones por las cuales el proceso terapéutico está detenido; el grado de la cooperación de las partes; las oportunidades que ha tenido la terapeuta para llevar a cabo su encomienda; y el nivel de comodidad que sienten las menores respecto al proceso.
*Id. pág.* 300

Entendemos que el foro primario, en su determinación, hizo caso omiso a nuestros pronunciamientos anteriores. Ante tales circunstancias, no vemos por qué hemos de variar los fundamentos en nuestra expresión anterior y resolver contrario a los mismos.

## III

Por todo lo anterior, expediría el recurso de *certiorari* y modificaría la resolución del Tribunal de Apelaciones para que, conforme a nuestros pronunciamientos anteriores, se celebre una vista en la que se diluciden los posibles efectos adversos de remover a la doctora Rosselló como terapeuta de las menores.


Anabelle Rodríguez Rodríguez
Juez Asociada